## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JUSTIN MAGILL,**

    **Plaintiff,**

**v.**                                   **CASE NO:**

**ORTHOPAEDIC MEDICAL GROUP OF TAMPA BAY**

**& SURGERY CENTER,**

**d/b/a ORTHOPAEDIC DEVELOPMENT PARTNERS, LLC,**

    **Defendants**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JUSTIN MAGILL, (hereinafter "Plaintiff" or "Mr. Magill"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, ORTHOPAEDIC MEDICAL GROUP OF TAMPA BAY & SURGERY CENTER, d/b/a ORTHOPAEDIC DEVELOPMENT PARTNERS, LLC (hereinafter "Defendant," "ODP") and alleges:

## INTRODUCTION

1.     The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on disability and retaliation in violation of the Americans with Disabilities Act

of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.    As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability, failed to provide reasonable accommodations, and retaliated against him in violation of his rights under the ADA and the FCRA.

3.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.    Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a)

and the principles of pendent jurisdiction.

6.    This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.    Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## **PARTIES**

8.    Plaintiff is JUSTIN MAGILL, a 41-year-old male who has been diagnosed with Bipolar II Disorder, Generalized Anxiety Disorder, and ADHD. Mr. Magill experiences manic episodes that require immediate medical attention and requires regular ketamine infusion treatments. Mr. Magill resides in Hillsborough County, Florida.

9.    Plaintiff is a member of a class protected against discrimination

and retaliation based on his disability under the ADA and the FCRA.

10. During the period from April 26, 2025, until June 18, 2025, Defendant employed Plaintiff as a Surgical Technician/Scrub Tech in its Operating Room.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA and the FCRA.

13. The Defendant, ORTHOPAEDIC MEDICAL GROUP OF TAMPA BAY & SURGERY CENTER, d/b/a ORTHOPAEDIC DEVELOPMENT PARTNERS, LLC, is a limited liability company with a principal place of business located at 13837 Circa Crossing Drive, Lithia, FL 33547.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, employing 250 or more employees.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state

statutes including, but not limited to the ADA and the FCRA.

16.    Accordingly, Defendant is liable under the ADA and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.    On June 22, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation.

19.    On July 15, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2025-03830) against Defendant.

20.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and

760.11(8), Florida Statutes.

21.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22.    Mr. Magill is diagnosed with Bipolar II Disorder, Generalized Anxiety Disorder, and ADHD. As a result of his Bipolar II Disorder, Mr. Magill experiences manic episodes that require immediate medical attention. Mr. Magill's current medications include Mirtazipine 7.5mg, Adderall 30mg, Vraylar 3mg, Lithium 600mg, Lamotrigine 50mg, and Propranolol 20mg.

23.    Mr. Magill requires regular ketamine infusion treatments, which he describes as "life saving" therapy that took him five years to access. Mr. Magill receives treatment from Dr. Eric Weinstock (psychiatrist), Dr. Margaret Higgs (ketamine therapy), and Gael S. Macleod (therapist).

24.    Due to his disabilities, Mr. Magill has a pitbull service dog that assists him during disability-related episodes. Mr. Magill's psychiatrist has documented that workplace environments have caused him to experience manic episodes.

25.    On April 26, 2025, Defendant hired Mr. Magill as a Surgical

Technician/Scrub Tech in its Operating Room at an hourly rate of $35.00-$35.50 per hour. Mr. Magill specialized in spine cases and mentored other scrub techs at the facility.

26.    Prior to his employment with Defendant, on March 5, 2025, Mr. Magill made an initial request to bring his service animal to work as a reasonable accommodation for his disabilities.

27.    On March 7, 2025, Dustin Sieff, HR Director, formally denied Mr. Magill's service animal accommodation request. Mr. Sieff stated that the service animal would not be permitted in the operating room, would require an alternative room that would prevent Mr. Magill from performing his full-time duties, and that care responsibility would fall on the employer outside of breaks and lunch.

28.    Despite Defendant's denial of Mr. Magill's service animal accommodation, Defendant's employee handbook specifically allowed service dogs in non-patient care areas, which were available at the facility.

29.    Moreover, Defendant allowed its CEO and IT staff to bring personal pet dogs to the workplace, as documented on social media, including a Facebook post by Brian Conway showing "Leo" the IT Department mascot.

30.    Defendant's denial reasons for Mr. Magill's service animal request changed over time and included breed-based discrimination, expressing concerns about aggression due to his service dog being a pitbull.

31.    During his employment, Mr. Magill demonstrated exceptional performance. His December 30, 2024 annual evaluation reflected a 4.0 rating with all "Outstanding" marks across all categories. The evaluation noted that Mr. Magill "consistently complete[d] tasks on time and to high standard," had "attendance and punctuality [that was] exemplary," showed "consistent reliability [as a] key factor in team's success," and his "extensive experience makes you invaluable resource."

32.    Mr. Magill received thank you cards from administration and doctors praising his work performance and dedication. He was recognized for overseeing spine cases and mentoring new scrub techs, specifically an employee named Desiree.

33.    On April 16, 2025, Mr. Magill received a verbal warning, which was the beginning of a pattern of disciplinary actions that coincided with his accommodation requests and disability-related needs.

34.    On April 29, 2025, HR sent an email confirming that employees must work a minimum of 30 hours per week to maintain benefits. HR

threatened to cut Mr. Magill's health insurance if he worked fewer than 30 hours per week, even for disability-related reasons.

35.    When Mr. Magill asked if calling out for disability reasons could result in loss of benefits, HR confirmed "yes," thereby threatening to deny him benefits for exercising his rights under the ADA.

36.    On May 8, 2025, Mr. Magill notified his supervisor, Jada Sexton-McAdoo, that he was experiencing a manic episode and needed immediate medical attention.

37.    On May 9, 2025, despite Mr. Magill's notification that he was having a manic episode, Defendant forced him to work during this medical crisis, putting both his safety and patients' safety at risk.

38.    Mr. Magill had previously informed Jada Sexton-McAdoo about his upcoming manic episode and stated that he needed to see his doctor as soon as possible, with a 9:00 AM appointment the next morning. Ms. Sexton-McAdoo told Mr. Magill that he could not come in late because there was no coverage available.

39.    As a result of Defendant's refusal to accommodate Mr. Magill's disability-related medical appointments, Mr. Magill was forced to miss critical medical appointments, resulting in almost $1,000 in missed

appointment fees.

40.     On May 13, 2025, in what appeared to be retaliation, Mr. Magill was sent home early at 2:30 PM despite being scheduled as a "late stay" until 6:00 PM, while all other employees were allowed to stay for an accreditation visit.

41.     On May 21, 2025, Mr. Magill received a positive performance review from his manager, Laura Gore. The original review praised Mr. Magill's communication skills as "clear, well-organized, and effective with no issues or concerns."

42.     However, HR Director Dustin Sieff subsequently ordered Laura Gore to delete the original positive May 21, 2025 review and write a new negative one. HR dictated the exact language for the replacement review.

43.     The replacement review, written under HR's direction, criticized Mr. Magill's communication skills and added requirements for maintaining a professional tone with HR, directly contradicting the original assessment.

44.     On May 30, 2025, Mr. Magill received both a pay raise, with an email stating "we're lucky to have you on the team," and simultaneously received a written warning and suspension for alleged unprofessional behavior that supposedly occurred on May 21, 2025.

45.     The May 30, 2025 disciplinary action was based on a false report by Jada Sexton-McAdoo, who claimed that Mr. Magill was "standing over manager pointing finger in face aggressively yelling" during the May 21st incident.

46.     When HR asked manager Laura Gore directly about the alleged May 21st incident, she contradicted Jada Sexton-McAdoo's account, stating that Mr. Magill "was just upset" and denying that any aggressive behavior had occurred.

47.     Despite manager Laura Gore's denial that any aggressive behavior had taken place, Defendant still subjected Mr. Magill to disciplinary action based on the false allegations.

48.     The retaliation against Mr. Magill escalated after he mentioned hiring an attorney to Jada Sexton-McAdoo. Previously, Mr. Magill had enjoyed a friendly relationship with Ms. Sexton-McAdoo, including hugging every morning and her liking his Instagram posts.

49.     After Mr. Magill returned from vacation and mentioned hiring an attorney, the relationship with Ms. Sexton-McAdoo became hostile, and the pattern of retaliation intensified.

50.     During the final two weeks of his employment, Defendant

further retaliated against Mr. Magill by peeling his name off his assigned locker, cutting his work hours, denying him breaks including lunches, and preventing him from attending medical appointments.

51.    On June 9, 2025, Mr. Magill texted his supervisor requesting early departure due to a mental health crisis, stating: "Can I please leave? I've been trying to hold myself together and I can't for very much longer. I didn't get to have a ketamine infusion Last week because I was out of town and I'm having a very bad day."

52.    Mr. Magill's ADA accommodation request "magically disappeared" from his employee file, demonstrating Defendant's deliberate disregard for his disability-related needs.

53.    On June 18, 2025, around 2:30 PM, Mr. Magill was called into COO Brian Conway's office where he was terminated by HR Director Dustin Sieff with Laura Gore present. Employee Braden Dixon witnessed Mr. Magill being escorted out of the facility.

54.    During the termination meeting, no specific verbal reason was given. Mr. Magill was only told that "today would be [his] last day at the center."

55.    The written termination letter cited "ongoing violations of

company's Code of Conduct and unprofessional behavior" referencing June 9 and June 17, 2025 incidents regarding "conversations with coworkers" and "pressuring behavior."

56.    Mr. Magill was given no opportunity to respond to the allegations or explain his side of the events before being terminated and escorted to clean out his locker.

57.    As a direct result of his termination, Mr. Magill lost his health insurance coverage and cannot afford his medications out of pocket. As Mr. Magill states, an unmedicated bipolar person "will end up in one of two places, Jail or the Hospital."

58.    Mr. Magill also lost access to his critical ketamine treatment therapy due to the loss of insurance coverage and income.

59.    Throughout this ordeal, it is notable that Jada Sexton-McAdoo, who played a central role in the adverse actions against Mr. Magill, had her RN license suspended for substance abuse under Florida Department of Health Case No. 2022-22252, was terminated from the Intervention Project for Nurses on June 3, 2022 for non-compliance with monitoring contract terms, and had Final Order No. DOH-24-0064-FOI-MQ issued against her on January 16, 2024.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Discrimination based on Disability
### 42 U.S.C. §§ 12101-12213

60.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 59 of this Complaint as though fully set forth herein.

61.     Plaintiff is a 41-year-old male who has been diagnosed with Bipolar II Disorder, Generalized Anxiety Disorder, and ADHD. Mr. Magill experiences manic episodes that require immediate medical attention and requires regular ketamine infusion treatments.

62.     At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

63.     At all times material herein, Defendant employed, and continues to employ, 250 or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of the ADA. 42 U.S.C. § 12101 et seq.

64.     Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

65.     At all times material herein, Defendant employed Plaintiff as a Surgical Technician/Scrub Tech from April 26, 2025, until his unlawful termination on June 18, 2025.

66.     Plaintiff's disabilities substantially limit one or more major life activities, including but not limited to his ability to concentrate, think, communicate, and interact with others, thereby qualifying him as an individual with a disability under the ADA.

67.     Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

68.     Defendant was also obligated to provide reasonable accommodations for Plaintiff's known disabilities and to engage in an interactive process to determine appropriate accommodations.

69.     However, Plaintiff was subjected to discriminatory treatment at the hands of his superiors and co-workers because of his disabilities, as more particularly alleged hereinabove.

70.     Specifically, Defendant discriminated against Plaintiff by: (a) denying his request for a reasonable accommodation in the form of bringing

his service animal to work; (b) threatening to cut his health insurance benefits if he worked fewer than 30 hours per week due to disability-related absences; (c) forcing him to work during a documented manic episode on May 9, 2025, despite his notification of the medical crisis; (d) denying him disability-related medical appointments, resulting in almost $1,000 in missed appointment fees; (e) manipulating his performance reviews to create false negative documentation after ordering positive reviews to be deleted and rewritten; and (f) subjecting him to false disciplinary actions based on fabricated allegations of aggressive behavior.

71.    Defendant's denial of Plaintiff's service animal accommodation was pretextual and discriminatory, particularly given that Defendant allowed other employees, including the CEO and IT staff, to bring personal pet dogs to the workplace, and Defendant's employee handbook specifically permitted service dogs in non-patient care areas that were available at the facility.

72.    Defendant's reasons for denying the accommodation changed over time and included impermissible breed-based discrimination against Plaintiff's pitbull service dog.

73.    Plaintiff believed that his superiors' offensive acts materially

altered the terms and conditions of his employment. Further, a reasonable person would have found that the offensive acts of Plaintiff's superiors materially altered the terms and conditions of Plaintiff's employment.

74.    Plaintiff did not welcome the offensive acts and did not directly or indirectly invite or solicit them by his own acts or statements.

75.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about the discrimination against Plaintiff based on his disabilities, but did not take prompt remedial action.

76.    Instead, Defendant escalated its discriminatory conduct by creating false documentation, manipulating performance reviews, and ultimately terminating Plaintiff's employment on June 18, 2025.

77.    Defendant violated the ADA by subjecting Plaintiff to discrimination because of his disabilities by: (a) failing to provide reasonable accommodations; (b) failing to engage in the interactive process; (c) creating a hostile work environment; (d) threatening to deny benefits for disability-related absences; (e) forcing him to work during medical crises; and (f) terminating his employment based on his disabilities.

78.    Further, Defendant failed to prevent and promptly correct workplace discrimination. Defendant's supervisors, managers, and Human

Resources personnel who learned about the objectionable workplace conduct and discrimination failed to promptly take steps to correct this conduct.

79.    The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the ADA.

80.    Defendant's actions constitute discrimination in violation of the ADA.

81.    As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) loss of health insurance coverage and inability to afford critical medications; (d) loss of access to life-saving ketamine infusion treatments; and (e) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other

nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, JUSTIN MAGILL, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, ORTHOPAEDIC MEDICAL GROUP OF TAMPA BAY & SURGERY CENTER, d/b/a ORTHOPAEDIC DEVELOPMENT PARTNERS, LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

    A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA. 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations, discriminating against Plaintiff based on his disabilities;

    B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

    C.    Award compensatory damages to Plaintiff in an amount that

will fully, justly, and reasonably compensate Plaintiff for the

nature, extent, and duration of his injuries and damages caused

by Defendant's discriminatory conduct and actions pursuant to

the ADA;

D.    Award Plaintiff all other damages available under the ADA,

including, but not limited to, the damages set forth above and

other economic losses proximately caused and allowable under

the ADA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the

prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness

fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem

equitable, just, and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Retaliation
### 42 U.S.C. §§ 12101-12213

82.    Plaintiff alleges, realleges, and incorporates by reference all

allegations set forth in each of the preceding Paragraphs 1 through 59 of this

Complaint as though fully set forth herein.

83.    Plaintiff is a 41-year-old male who has been diagnosed with Bipolar II Disorder, Generalized Anxiety Disorder, and ADHD.

84.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

85.    Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

86.    At all times material herein, Defendant employed Plaintiff as a Surgical Technician/Scrub Tech from April 26, 2025, until his unlawful termination on June 18, 2025.

87.    Plaintiff engaged in protected activity under the ADA by: (a) requesting reasonable accommodations for his disabilities, including the ability to bring his service animal to work; (b) requesting disability-related medical leave and accommodations for medical appointments; (c) notifying supervisors of his disability-related medical crises; and (d) mentioning that he had consulted with an attorney regarding his rights.

88.    Defendant subjected Plaintiff to adverse employment actions in retaliation for his protected activity, including: (a) escalating disciplinary actions after his accommodation requests; (b) manipulating performance

reviews by ordering positive reviews to be deleted and replaced with negative ones; (c) subjecting him to false disciplinary actions based on fabricated allegations; (d) cutting his work hours; (e) denying him breaks and lunches; (f) removing his name from his assigned locker; (g) sending him home early while allowing other employees to stay for important events; and (h) ultimately terminating his employment on June 18, 2025.

89.    The timeline of retaliatory actions demonstrates a clear pattern of retaliation that escalated after Plaintiff's protected activities, particularly after he mentioned consulting with an attorney.

90.    The relationship between Plaintiff and his supervisor Jada Sexton-McAdoo changed dramatically from friendly (including daily hugging and social media interactions) to hostile immediately after Plaintiff mentioned hiring an attorney upon his return from vacation.

91.    The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

92.    As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the

workplace.

93.    Defendant violated the ADA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it, and instead actively participated in and escalated the retaliation.

94.    Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

95.    The temporal proximity between Plaintiff's protected activities and the adverse employment actions, combined with the pretextual nature of the reasons given for the disciplinary actions and termination, establishes a prima facie case of retaliation.

96.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under the ADA.

97.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and

future; (b) lost earning capacity; (c) loss of health insurance coverage and inability to afford critical medications; (d) loss of access to life-saving ketamine infusion treatments; (e) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (f) other economic losses proximately caused and allowable under the ADA, according to proof.

**WHEREFORE**, the Plaintiff, JUSTIN MAGILL, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, ORTHOPAEDIC MEDICAL GROUP OF TAMPA BAY & SURGERY CENTER, d/b/a ORTHOPAEDIC DEVELOPMENT PARTNERS, LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA. 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations by retaliating against Plaintiff for engaging in protected activity under the ADA;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to

which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.    Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's retaliatory conduct and actions pursuant to the ADA;

D.    Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem

equitable, just, and proper.

## COUNT III
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### Disability Discrimination
### Florida Statutes §§ 760.01-760.11

98.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 59 of this Complaint as though fully set forth herein.

99.    Plaintiff is a 41-year-old male who has been diagnosed with Bipolar II Disorder, Generalized Anxiety Disorder, and ADHD.

100.    At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

101.    Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

102.    At all times material herein, Defendant was and is an "employer"

within the meaning of the FCRA. § 760.02(7), Florida Statutes.

103.   Plaintiff's disabilities substantially limit one or more major life activities, including but not limited to his ability to concentrate, think, communicate, and interact with others, thereby qualifying him as an individual with a disability under the FCRA.

104.   Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

105.   However, Plaintiff was subjected to discrimination because of his disabilities through discriminatory treatment by Defendant and its employees, supervisors, managers, and other agents, as more particularly alleged hereinabove.

106.   Specifically, Defendant discriminated against Plaintiff because of his disabilities by: (a) denying his request for reasonable accommodation in the form of bringing his service animal to work; (b) threatening to terminate his health insurance benefits for disability-related absences; (c) forcing him to work during a documented manic episode; (d) denying him access to disability-related medical appointments; (e) manipulating his

performance evaluations to create false negative documentation; (f) subjecting him to disciplinary actions based on fabricated allegations related to his disability; and (g) terminating his employment because of his disabilities.

107.  Plaintiff believed that Defendant's discriminatory behavior materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Defendant's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

108.  Plaintiff did not welcome the offensive statements, acts, and discriminatory treatment and did not directly or indirectly invite or solicit them by his own acts or statements.

109.  At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, the discrimination suffered by Plaintiff because of his disabilities, but did not take prompt remedial action to eliminate the discriminatory behavior.

110.  Instead, Defendant escalated the discrimination by creating false documentation, manipulating performance reviews, and ultimately terminating Plaintiff's employment.

111. Defendant violated the FCRA by subjecting Plaintiff to discrimination because of his disabilities and by failing to promptly correct it once it learned of it.

112. Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

113. The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

114. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) loss of health insurance coverage and inability to afford critical medications; (d) loss of access to life-saving ketamine infusion treatments; (e) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and

relationships; and (f) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, JUSTIN MAGILL, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, ORTHOPAEDIC MEDICAL GROUP OF TAMPA BAY & SURGERY CENTER, d/b/a ORTHOPAEDIC DEVELOPMENT PARTNERS, LLC, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his disabilities;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.    Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT IV
### VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### Retaliation
### Florida Statutes §§ 760.01-760.11

115.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 59 of this

Complaint as though fully set forth herein.

116. Plaintiff is a 41-year-old male who has been diagnosed with Bipolar II Disorder, Generalized Anxiety Disorder, and ADHD.

117. At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

118. Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes.

119. At all times material herein, Defendant employed Plaintiff as a Surgical Technician/Scrub Tech from April 26, 2025, until his unlawful termination on June 18, 2025.

120. Plaintiff engaged in protected activity under the FCRA by: (a) requesting reasonable accommodations for his disabilities; (b) asserting his rights to disability-related accommodations and medical leave; (c) opposing discriminatory practices against him based on his disabilities; and (d) consulting with legal counsel regarding his rights under disability discrimination laws.

121. Defendant subjected Plaintiff to adverse employment actions in retaliation for his protected activity under the FCRA, including: (a) escalating disciplinary actions following his accommodation requests; (b)

ordering the deletion and rewriting of positive performance reviews to create false negative documentation; (c) subjecting him to disciplinary actions based on fabricated allegations; (d) reducing his work hours and denying him breaks; (e) removing his name from his assigned locker; (f) excluding him from work events while including other employees; and (g) terminating his employment.

122.   The temporal relationship between Plaintiff's protected activities and the adverse employment actions establishes a prima facie case of retaliation under the FCRA.

123.   As his employer, Defendant was obligated to guard against retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the workplace.

124.   Defendant violated the FCRA by retaliating against Plaintiff for engaging in protected activity and by failing to promptly correct the retaliatory conduct once it learned of it.

125.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, as more particularly described hereinabove, constitute unlawful retaliation under the FCRA.

126.  Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

127.  The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under the FCRA.

128.  As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) loss of health insurance coverage and inability to afford critical medications; (d) loss of access to life-saving ketamine infusion treatments; (e) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (f) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, JUSTIN MAGILL, requests trial by jury of

all issues so triable as of right, demands judgment against the Defendant,
ORTHOPAEDIC MEDICAL GROUP OF TAMPA BAY & SURGERY
CENTER, d/b/a ORTHOPAEDIC DEVELOPMENT PARTNERS, LLC, and
in favor of Plaintiff, and respectfully requests that this Court grant the
following relief:

A.  Grant judgment in favor of Plaintiff and declare that Defendant
    has violated the FCRA by retaliating against Plaintiff for
    engaging in protected activity under the FCRA;

B.  Award sufficient remedial relief to make Plaintiff whole for the
    individual loss that he has suffered because of the retaliation to
    which Defendant subjected him, including, but not limited to,
    front pay in lieu of reinstatement, full backpay with interest,
    pension and related benefits, and any other appropriate
    nondiscriminatory measures to overcome the effects of the
    retaliation he has endured;

C.  Award compensatory damages to Plaintiff in a sum that will
    properly and completely compensate Plaintiff for the nature,
    extent, and duration of the injuries and damages caused by
    Defendant's retaliatory conduct and actions, pursuant to and

within the statutory limitations of the FCRA;

D.    Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.    Award Plaintiff pre- and post-judgment interest;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 5th day of September 2025.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com